CASE 33.—MANDAMUS ON THE RELATION OF W. M. WOOD-
        SIDE TO COMPEL E. E. MUDD, WARDEN OF THE
        STATE PENITENTIARY, TO PAY HIM A REWARD
        FOR THE CAPTURE OF A STATE CONVICT.—Janu-
        ary 27, 1910.

## Mudd, Warden v. Woodside

Appeal from Franklin Circuit .Court.

R. L. STOUT, Circuit Judge.

From a judgment for petitioner, defendant appeals.
—Affirmed.

1.  Rewards—Return of Escaped Convict—Statutes.—Ky. St. Sec.
    3798 (Russell's St. Sec. 5219), providing that the warden shall
    pay into the state treasury the funds in his hands not required
    for the current use, and shall deposit all moneys remaining
    in his hands in some bank to his credit as warden, and shall
    be allowed no credit in the settlement of his accounts, unless
    he shall produce the receipt of the person to whom money
    was paid by him, showing for what it was paid.  Section 4688
    (Russell's St.Sec. 4978; Act March 27, 1893, page 607, c. 169,
    Sec. 9) provides that no money shall be paid out of the treas-
    ury except upon the warrant of the Auditor, drawn upon the
    Treasurer and then only by the check of the Treasurer upon a
    designated state depository.  Held, that these sections fur-
    nish no warrant to the warden for refusing to pay to one
    who has returned an escaped convict to the penitentiary
    the reward prescribed to be paid by section 1936 (Russell's
    St. Sec. 3455).

. 2.   Rewards—Return of Escaped Convict—Statutes.—Under Ky.
St. Sec. 1936 (Russell's St. Sec. 3455), providing a reward for
the capture and return of an escaped convict, a party doing so
was entitled to the reward, although the convict, because
of injuries had abandoned the idea of escape, and asked him
to return her to the prison.   .

JAMES BREATHITT, Attorney General and JOHN F. LOCKETT,
Assistant Attorney General, for appellant.

B. G. WILLIAMS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM·
MISSIONER—Affirming.

On about July 13, 1909, a convict by the name of
Dicey Gilpin escaped from the penitentiary at Frank-
fort.   Appellee, W. M. Woodside, recaptured the con-
vict, and conveyed her back to the penitentiary, and
delivered her to the appellant.   Thereupon the appel-
lant gave appellee the following receipt: "Kentucky
Penitentiary, E. E. Mudd, Warden.   Frankfort, Ky.,
July 13th.   Received of W. M. Woodside the body of
Dicey Gilpin, an escaped convict, for whom a reward
$100.00 was offered.   E. E. Mudd, Warden."

Sec. 1936 of the Kentucky Statutes (Russell's Stat.
sec. 3455) is as follows:

"When a convict shall escape from the penitentiary
the warden shall issue a warrant, directed to all sher·
iffs, constables and marshals in the state, and to all
persons, authorizing and requiring them to retake
and convey such convict to the penitentiary.   The
person recapturing and conveying back to the peni-
tentiary any convict shall be paid by the warden a
reward of one hundred dollars, and all reasonable
expenses out of the funds belonging to the state.
The warden may employ persons to go in pursuit of
the convict, and shall pay them a reasonable compen-

sation for their services. If any sheriff, or other officer, shall refuse or willfully neglect to obey the warrant of the warden, he shall be fined not less than ten nor more than one hundred dollars.'' Charging that he had recaptured and conveyed the said convict back to the penitentiary, and that he was entitled to a reward of $100 by virtue of the provisions of the above statute, appellee instituted this action for a writ of mandamus to compel appellant, as warden of the penitentiary, to pay to him the sum of $100.

Appellant answered in two paragraphs. In the first paragraph he pleaded that he had given the receipt under the mistaken belief that appellee had really recaptured said convict; that the reward of $100 was for recapturing and conveying back an escaped convict, and as such was offered by the state under the statute above referred to, and was not offered by appellant either personally or officially. Appellant further pleaded in the same paragraph that, while the statute under which the action was instituted remains upon the statute book, yet other statutes had been subsequently passed stripping the wardens of the penitentiaries of all moneys, except that received for supplies to the prisons and for salaries, and that he has no funds on hand, nor could he receive any under the law out of which to pay said reward; that since the passage of the act relied upon by appellee the General Assembly had required the covering of all moneys received by the labor of convicts into the state treasury, and that the support of its penal institutions is through specific annual appropriations by enactment of the General Assembly, and that even the salaries of the officials and employes of said institution are paid by the State Treasurer through the warrant of the State Auditor; that the

statute relied upon in the petition was repealed by necessary implication by the following act of the General Assembly (Acts 1891-93, p. 607, c. 169, sec. 9), approved March 27, 1893; it being section 4688, Ky. St.:

"No money shall be paid out of the treasury except upon the warrant of the Auditor, drawn upon the Treasurer as now or may hereafter be provided by law, and then only by the check of the Treasurer upon a designated state depository; and no such check shall be given by the Treasurer, even though the Auditor issues a warrant therefor, unless the law under which the money may be claimed expressly directs and orders that it shall be paid out of the public treasury." In paragraph 2 of the answer appellant further pleaded by way of defense that in escaping from the penitentiary the said Dicey Gilpin fell from the wall surrounding the penitentiary upon the outside thereof, injuring herself so severely that she was forced, after traveling a short distance therefrom, to seek shelter at the home of appellee, where she revealed to him and his family that she was an escaped convict from the penitentiary; that this was in the nighttime, and on the following morning, having abandoned the idea of escape, she asked appellee to notify the prison authorities to come after her, whereupon appellee, after communicating with said authorities, himself brought her to the prison, where the receipt pleaded was issued to him; that if he was liable to pay the reward offered by the state for the recapture and conveying back of an escaped convict, the facts disclosed that there was no recapture of the convict, and the conveying back was a mere accommodation to the prison authorities, for which appellee ought to be paid, if anything, the expense in-

curred, the value of the time lost from his business, and no more. The special plea contained in the first paragraph of appellant's answer was overruled. Thereupon a demurrer was filed to the second paragraph of the answer, and sustained. The court thereafter entered judgment directing appellant, as warden of the penitentiary, to pay appellee the sum of $100 and costs of the proceedings. From that judgment this appeal is prosecuted.

The effect of the special plea is that appellant, as warden of the penitentiary, is not liable for the payment of the reward; that appellee's action, if he has any, lies against the Auditor of Public Accounts. Section 3798 of the Kentucky Statutes (Russell's St. sec. 5219), is as follows: "The warden shall balance his cash account each month and report the same to the commissioners; and on the first Monday of each month he shall pay into the state treasury so much of the funds in his hands as, in the opinion of said commissioners, is not required for the current use of the penitentiary. He shall deposit all money remaining in his hands, not deposited in the treasury in some bank selected by him, to his credit as warden; and he shall be allowed no credit in the settlement of his accounts, unless he shall produce the receipt of the person to whom money was paid by him, which receipt shall show upon its face for what the money was paid. And the books of the warden and his clerks shall at all times be open to the inspection of any committee of the Legislature and to the commissioners."

It is perfectly apparent from this statute that the warden has in his hands funds for the current use of the penitentiary. It is made his duty to turn into the treasury so much of the funds in his hands as in

the opinion of the commissioners is not required for the current use of the penitentiary. He is required to deposit all money remaining in his hands, not deposited in the treasury, in some bank selected by him, to his credit as warden. That he is authorized to pay out money is shown by the latter part of the section, which provides that he shall be allowed no credit in the settlement of his accounts, unless he shall produce the receipt of the person to whom money was paid by him, which receipt shall show upon its face for what the money was paid. Section 4688 has application only to such money as is in the state treasury; it does not apply to money in the hands of the warden for current use of the penitentiary, which is deposited to his credit as warden, and which has not been turned into the treasury. Furthermore, the repeal of the statute by implication is not favored. It is just as much the duty of the warden to offer a reward for the return of an escaped convict, and to pay the reward, as it is to take care of the prisoners while in the prison and to give to each upon his release a suit of clothes and the sum of $5. We, therefore, conclude that the reward, if any, was payable by the warden out of the funds in his hands, and not by the Auditor of Public Accounts. If he has no available funds on hand, the commissioners should provide him with such funds out of the appropriations made for the current expenditure of the penitentiary. Upon paying such rewards, of course, the warden will be given credit in his settlements when he produces the receipt signed by the person recapturing and conveying back the convict to the penitentiary, and showing for what the money was paid.

But it is insisted that the facts set out in the second paragraph of appellant's answer, to the effect that

the convict voluntarily surrendered herself and requested appellee to notify the prison authorities, did not constitute a genuine case of recapture, and that therefore no reward is due appellee. The very purpose of the reward is to secure the return of the convict. An escaped convict is a menace, not only to every person he meets, but to every community into which he goes. To prevent such danger to the public, and at the same time to confine the convict where he belongs, and, therefore, to have him returned, was the plain purpose of the state in enacting the statute in question. That the recapture and conveying back of the convict is always attended by danger there can be no doubt. The right of a party to the reward does not depend upon the amount of strategy or force employed to effect the capture. If this were true, few would be willing to imperil their lives in such an undertaking. Even where the convict voluntarily surrenders himself, the danger to the party conveying him back to the penitentiary is not passed until the convict has been delivered to the proper authorities. A reward is offered as an incentive to a man to take the risk of such danger. We, therefore, conclude that it matters not that the convict voluntarily surrenders himself, or is overtaken by force and startegy, just so the party making the capture conveys him back to the penitentiary and delivers him to the warden.

For the reasons given, the judgment is affirmed.