SAM B. STROTHER, Administrator of the Estate of
THOMAS ORIE McCARTY, Deceased, Appel-
lant, v. BUSINESS MEN'S ACCIDENT ASSO-
CIATION OF AMERICA, Respondent.

Kansas City Court of Appeals, July 3, 1916.

1. INSURANCE, ACCIDENT: Meaning of the Term "Accident."
McC., holding a policy of accident insurance, whereby his
estate was to be paid $5000 in case of his death by accident,
forcibly put another out of a restaurant and, after so doing,
was struck upon the head with a heavy wooden bar in the
hands of another man, from the affects of which blow insured
died. *Held*, that his death was an "accident" within the mean-
ing of the term as used in insurance policies since, as to in-
sured, it was unforeseen, unexpected and unusual, not taking
place according to the usual course of things.

2. ———: ———: Injuries Intentionally Inflicted. Under a pol-
icy which, by its terms, did not extend to "any injury fatal
or otherwise, intentionally inflicted by any other person" the
company was not liable where the insured's injuries were
intentionally inflicted by another. The insured was the in-
dividual intended to be struck and intended to be injured.
And, since the policy did not cover any injury intentionally
inflicted whether fatal or otherwise, it was not incumbent
upon the insurer, in order to escape liability, to prove that
the one striking the blow intended to kill insured.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lu-
cas*, Judge.

AFFIRMED.

*A. R. McClanahan, Jas. E. Taylor* and *Reed &
Harvey* for appellant.

*Gilmore & Brown* for respondent.

TRIMBLE, J.—Thomas O. McCarty held an acci-
dent policy issued by the defendant, an assessment
accident insurance company organized under the laws
of Missouri. In case of his death by accident, the

policy provided for the payment of $5000 to his estate. However, it contained the following provision:

"This policy does not cover . . . any injury, fatal or otherwise, intentionally inflicted by the insured (sane or insane) or by any other person (sane or insane) except it be established that the assault was committed for the sole purpose of burglary or robbery."

While the policy was in force, McCarty was struck a violent blow upon the head with a heavy wooden bar by one, Cliff Dunford, from the effects of which insured died shortly thereafter. His administrator brought this suit to recover the amount of the policy.

The company set up the above quoted provision of the policy and alleged that insured "died of fatal injuries intentionally inflicted upon him by another person, to-wit, one . . . Cliff Dunford; that the said Cliff Dunford intentionally struck the said Thomas Orie McCarty a heavy and powerful blow upon the head with a piece of timber or lumber about two by four inches in width and thickness and about five feet in length, causing the fatal injuries from which the said Thomas Orie McCarty died."

The reply admitted that insured "was struck upon the head with a board by Clifford Dunford and received injuries thereby which proved fatal, but plaintiff denies that the said Dunford, when he struck deceased, intended to inflict a fatal injury."

At the close of all the evidence the court sustained defendant's demurrer thereto, and the plaintiff has brought the case here.

The circumstances leading up to and surrounding the infliction of the blow from which insured died are as follows:

It occurred in a restaurant maintained in connection with a saloon in Kansas City. Late in the night of December 14, 1914, three women and three men were seated at a table in the restaurant. One of

these women, Rose, had been living with insured, though they were not married. Two of the men were farmers who had sold some horses to the third man, whose name was King, and the three had come to the restaurant at his suggestion. While thus seated at the table, two men, Cordell and Dunford, entered the room. Cordell approached one of the women, known as "Billie" and tried to get her to go home. Rose asked her to stay, and a quarrel started between Rose and Cordell. The latter, after using vile language, drew a knife and forced Rose to retreat toward the door. McCarty, the insured, was in the saloon and, learning in some way that Rose was in trouble, came through the street door into the restaurant and put Cordell out, either pushing him or knocking him out of the door. Rose at once shut the door and put her foot against it to prevent Cordell's return. McCarty, in the restaurant turned around and was facing Dunford when the latter, having picked up a heavy wooden bar, a two-by-four, six feet long, and, holding it in both hands, drew it back over his head to an angle of forty-five degrees so as to get "a full swing" and brought it down with all his force upon McCarty's head. McCarty dropped to the floor without uttering a word. He was unable to speak when one of the women tried to help him, being as she said, "paralyzed." He was taken home and died eight days later.

When Dunford struck him there was no one between the two or close to them and there is no room for any inference that Dunford, when he struck, was intending to do otherwise than to strike McCarty, the individual he did strike, though it is true the two men were strangers to each other. After felling McCarty, Dunford announced that he proposed "to clean up the —— —— place" and, approaching one of the farmers at the table, struck at him with the wooden bar. The latter, however, avoided the blow and gave him "a poke in the jaw" which caused him to drop the

bar. Thereupon Dunford and Cordell, who by this time had returned, began cutting the farmer with knives until in some way, not disclosed by the record, they ceased and left.

Under the restricted meaning given the term "accident" in policies of this character, the blow which McCarty received, and his death resulting therefrom, may be said to be accidental; for *as to him* they were unforeseen, unexpected and unusual, not taking place according to the usual course of things, and, therefore, were accidental in the usual, natural and popular meaning of the word. [Lovelace v. Travellers Protective Assn., 126 Mo. 104.] However, the decision in the case at bar does not turn upon whether the death was accidental, but upon another condition in the policy, which says it shall "not cover *any injury, fatal or otherwise, intentionally inflicted* by . . . any other person." The question is, Do the circumstances surrounding insured's death bring it within this exception to defendant's liability?

While it is true that in the construction of insurance contracts that interpretation must be adopted which is most favorable to insured, yet this is only where there is fair room for construction. If words are used which clearly indicate the intention of the parties, effect must be given thereto. Courts have no more right to *remake* insurance contracts than any others.

Now, unquestionably McCarty's injury was inflicted by Dunford; and there is no room for any inference that the latter did not intend to inflict it. McCarty had just pushed or thrown Cordell out of the restaurant and had turned back toward the body of the room and was facing Dunford when the latter, having picked up the bar as his companion was being put out, swung it back over his head so as to give it full force and then brought it down upon McCarty's

head. No one was about them. McCarty was the one he intended to strike and the general "free for all fight" that plaintiff claims took place, occurred after McCarty had been thus intentionally felled.

Neither is there anything giving rise to an inference that McCarty's death resulted from anything other than the blow itself. The blow was the direct, immediate and proximate cause thereof with no untoward or unforseen cause intervening between the blow and the death. For instance, the blow did not cause McCarty to fall and, in *falling,* receive an injury from which he died. In other words, the injury which Dunford intentionally inflicted caused the death of insured unassisted by any other cause. And the result which the blow produced was one reasonably and naturally to be apprehended from the use of such a weapon applied in the manner in which it was used.

The policy does not say the *death* of the insured must have been intended. The exception deals with any *injury* intentionally inflicted whether that injury prove fatal or otherwise. Plaintiff insists that before defendant can claim exemption from liability, it must prove that Dunford intended to kill McCarty. But certainly Dunford intended to *injure* him and the policy says that if the injury was intentionally inflicted then that injury is not covered by the insurance no matter what the result of the injury may be, whether fatal or otherwise. The only case, of which we are aware, which seems to give any countenance to the view that defendant must establish the fact that Dunford intended the precise and *full extent* of the result which followed his act, is the case of Utter v. Traveller's Ins. Co., 65 Mich. 545. In that case, however, the wording of the policy was that the "insurance shall not be held to extend to . . . any case of death or personal injury unless the claimant under this policy shall establish . . . that said *death* or personal injury . . . was not *the result of de-*

*sign''* etc. In other words, the exemption in the policy
in that case dealt with two things, death or personal
injury, and each must be the "result of design" in
order to relieve the company. In that case, a deputy
sheriff was sent to a house of ill fame with instructions
to arrest a man therein as a deserter from the army.
When he approached the door it was opened by in-
sured when the officer recklessly shot him not knowing
that he was the man to be arrested, but supposing that
he was elsewhere in the house. The opinion on page
552 says: "It seems to me that the design intended
by the terms of this policy must be the design that
intended the actual result accomplished, and not the
design of the act itself, which act resulted in the kill
ing of one contrary to the design of the act. If, when
Berry fired this shot, he did not know the man he fired
at was Utter, and did not intend to kill Utter, it cannot
be said that Utter lost his life by the design of Berry."
The court also uses language throughout the opinion
showing that the word "design" meant a plan pre-
viously formed in the mind and then intentionally
carried out by the act. The words "result of design"
are however vastly different from the words of the
policy in the case at bar. Here the insurance does not
extend to any *injury* "intentionally inflicted." This
does not require the intention to go further than the
blow inflicted nor is the policy considering results fur-
ther than that the blow shall cause injury. The differ-
ence between the Utter case and the case at bar is noted
in the case of Continental Casualty Co. v. Cunning-
ham, 66 So. 41, l. c. 42, where the court, speaking of
the Utter case, says:

"That case, however, is decisively distinguished
from the present case by the language of the policy
there construed. The liability requirement that the
death or injury of the assured should not be the re-
sult of design is obviously of narrower import than a
requirement (as here) that it should not be the result

of an intentional act. If the Utter case is not thus distinguishable from this case we are constrained to regard it as unsound.''

The Cunningham case also is authority for our holding that the fact that McCarty and Dunford were strangers is immaterial. What difference does it make as to their acquaintance with each other? Dunford had been in the restaurant long enough to see what McCarty had done to Cordell, long enough to pick up the bar and form the intent to strike the individual before him, and he carried that intent into execution by striking the one he intended to strike. The injury McCarty received was, therefore, intentionally inflicted by Dunford and that is all the policy requires to exempt the company. [Phelan v. Travellers Ins. Co., 38 Mo. App. 640, l. c. 646; Jarnigan v. Travellers Protective Ass., 138 Fed. 892; Travelers Protective Assn. v. Langalz, 86 Fed. 60; Matson v. Traveller's Ins. Co., 93 Me. 469; General Accident. etc. Corporation v. Stedman, 153 S. W. 692.] We are of the opinion that the facts brought the case within the clause of the policy above quoted and that the contract of insurance did not cover such injury. [Gaynor v. Traveller's Ins. Co., 77 S. E. 1072; Traveller's Ins. Co. v. McConkey, 127 U. S. 661; Traveller's Ins. Co. v. McCarthy, 15 Col. 351; Railway Officials etc. Accident Assn. v. McCabe, 61 Ill. App. 565; Continental Cas. Co. v. Fleming, 124 S. W. 321; Traveller's Protective Assn. v. Weil, 91 S. W. 886; Fidelity & Casualty Co. v. Smith, 71 S. W. 391; Continental Cas. Co. v. Morris, 102 S. W. 773; Grimes v. Fidelity & Cas. Co., 76 S. W. 811; Ryan v. Continental Cas. Co., 94 Neb. 35; Washington v. Union Cas. Co., 115 Mo. App. 627.]

We have examined the authorities cited by plaintiff, but in our opinion, owing to the difference in the wording of the policy and the facts surrounding the injury, they do not apply. The judgment of the trial court is affirmed. All concur.