### UNION CENT. LIFE INS. CO. v. ROBINSON.*

(Circuit Court of Appeals, Fifth Circuit. November 3, 1906.)

No. 1,602.

**1. PRINCIPAL AND AGENT—NOTICE TO AGENT—IMPUTATION TO PRINCIPAL.**

While it is the general rule that notice to an agent of any matter connected with the agency is notice to the principal, such rule has no application to a case where the agent at the time he receives such notice is acting for himself, in his own interest, adversely to the interest of his principal, and the communication of the notice to the principal would be contrary to his interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 689.

Ed. Note.—Knowledge of agent as notice to principal. Effect of adverse interest, fraud, or collusion of agent, see note to Chandler v. Rutherford, 43 C. C. A. 222.]

**2. INSURANCE—BINDING RECEIPT ISSUED BY AGENT OF LIFE COMPANY.**

A general agent of defendant life insurance company was entitled by his contract of agency to a commission of 50 per cent. of the first premium on policies secured by him, but such commission was to accrue only when the premium was paid in cash to the company, and he was required to hold all sums collected by him in trust. He took an application for a policy, which was forwarded to the company, and pending its acceptance he issued to the applicant what was called a "binding receipt" for the amount of the first premium, which provided that the insurance should be in force from its date provided the application was accepted; otherwise the amount should be returned. He was authorized to issue such receipt where the premium was in fact paid, but in this case he received a note for one-half the premium, which he discounted, and agreed for purposes of his own to give the applicant credit for one-half on account of his commission. The applicant died, no policy having been delivered, and the beneficiary brought action on the receipt, alleging that the application had been accepted prior to the death. *Held* that, since the premium was not in fact received by the agent and held in trust, as required by his contract, the transaction by which the receipt was issued was not binding upon the company unless it had knowledge or notice of the facts, and that such notice could not be imputed to it because of the knowledge of the agent.

In Error to the Circuit Court of the United States for the Northern District of Georgia.

See 144 Fed. 1005.

Henry C. Peeples and Robert Ramsey (Maxwell & Ramsey and Peeples & Jordan, on the brief), for plaintiff in error.

Alex C. King and Samuel N. Evins (King, Spalding & Little and Evins & Spence, on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

SHELBY, Circuit Judge. This is an action at law brought by Roby Robinson, a citizen of Georgia, against the Union Central Life Insurance Company, an Ohio corporation, upon an alleged contract insuring the life of William F. Robinson. On January 1, 1898, an application was made by William F. Robinson to the insurance company for insurance upon his life for $5,000 in favor of his son, Roby Robinson.

*Rehearing denied January 15, 1907.

No part of the premium was paid at the time the application was made. The application was sent to the insurance company at Cincinnati, Ohio, at the instance of its general agent, W. M. Leary. On January 5, 1898, Roby Robinson received at Atlanta, Ga., from Leary what is called a "binding receipt." This acknowledged the receipt from Roby Robinson of $247.85, the amount of the first annual premium, and contained the agreement that:

"Wm. F. Robinson is to be insured from date of this receipt, in accordance with all the provisions, conditions, and stipulations of the policies of the said company, provided said application shall be approved and accepted by said company. If, however, the application shall be declined by the company, this agreement is to be null and void, and the amount, receipt whereof is herein acknowledged, is to be returned to said Roby Robinson by me on surrender of this receipt."

No money was in fact paid by Roby Robinson when this receipt was given. He gave Leary a note, payable to him individually, for half the premium, due at 90 days, and he accepted from Leary a gift of the other half of the premium, which Leary claimed was due to him by the company as a commission for procuring the insurance. The note was discounted at a bank, where Roby Robinson paid it before its maturity, and on the day his father died, January 22, 1898.

It was alleged in his petition and contended by the plaintiff that the contract shown by the binding receipt was approved and accepted by the company before the death of William F. Robinson, and was in force when he died. The company contended that the application for insurance was never approved and accepted; that, on the contrary, it was held under consideration at the time of the death of William F. Robinson; and that, after the death of William F. Robinson, it tendered to Roby Robinson the amount of the premium named in the receipt. As another defense, the company contended that the powers of Leary as agent did not authorize him to bind the company by taking a note for half the premium, and giving Roby Robinson his (Leary's) commission for the other half, and that the company did not consent to or ratify such transaction. A more detailed statement of the facts that relate to these several contentions will be given as they are considered. There was a verdict in favor of the plaintiff below for $5,000, and the comapny sued out this writ, and has made many assignments of error, only one of which it will be necessary to consider.

In the course of his charge to the jury, the learned trial judge said: "I state to you, gentlemen, that notice to an agent of any matter connected with the agency is notice to the principal." There is no doubt but that this is a correct statement of the general rule. It is sometimes more elaborately stated that when, in the course of his employment, the agent acquires knowledge or receives notice of any fact material to the business in which he is employed, the principal is deemed to have notice of such fact. Tiffany on Agency, § 59, p. 257. The insurance company reserved an exception to this charge. The charge was only pertinent as applying to the transactions between Roby Robinson and Leary, as the agent of the insurance company. It was equivalent to instructing the jury that any knowledge that Leary obtained or had in reference to his transactions with Roby Robinson

was to be imputed to the insurance company. The reason usually given for the rule announced by the trial judge is that, if the notice is received in the line of the agent's authority, it is his duty to inform his principal, and the law presumes that he performs this duty; and that, ordinarily, on principles of public policy, the knowledge of the agent is imputed to the principal. Story on Agency, § 140. There is, however, an exception to the general rule which is as well established as the rule itself. The rule has no application to a case where the agent is acting for himself, in his own interest, adversely to the interest of his principal. In such case the adverse character of his interest takes the case out of the operation of the general rule, because, first, he will be likely, in such case, to act for himself, rather than for his principal; and, secondly, he will not be likely to communicate to the principal a fact which he is interested in concealing. It would be, therefore, both unjust and unreasonable to impute notice by mere construction under such circumstances. Thomson-Houston Electric Co. v. Capitol Electric Co. (C. C.) 56 Fed. 849; Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736. In Allen v. South Boston Railroad Co., 150 Mass. 200, 206, 22 N. E. 917, 919, 5 L. R. A. 716, 15 Am. St. Rep. 185, the court said:

"There is an exception to this rule [referring to the general rule above quoted] when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent."

There have been conflicting suggestions as to the true reason for the rule in question and the exception to it (Irvine v. Grady, 85 Tex. 120, 125, 19 S. W. 1028; Allen v. South Boston R. R. Co., supra); but it would not be useful to enter on that inquiry, for, whatever may be the true reason for the rule and the exception to it, both are unquestionably too well established now to be controverted. Both have been uniformly held applicable to officers and other agents of corporations. Tiffany on Agency, § 61, p. 266; Barnes v. Trenton Gaslight Co., 27 N. J. Eq. 33–37; Whelan v. McCreary, 64 Ala. 319, 329.

The record shows that Leary was a general agent of the insurance company. Under the contract of agency, all moneys and securities received by him for the company were to be held by him as a fiduciary trust, and not to be used by him for any purpose whatever. If money and securities when collected were not immediately sent to the insurance company, they were at once deposited by him in such bank or banks as the company might approve, to the credit of the company. In reference to Leary's compensation, it was agreed that he was to receive a commission upon premiums which were paid in cash to, and received by, the company on all policies of insurance effected through his procurement at the rate of 50 per cent. on the first premiums paid on such policies as the one in question. Such commissions were to accrue only as the premiums were paid in cash to the company. Through

Leary's agency, W. F. Robinson made an application for $5,000 of insurance in favor of his son, Roby Robinson. The application represented that the premium had been paid in advance. It contained this provision:

"I agree that any policy which may be issued under this application shall not be valid until the first premium is paid to the company, or its authorized agent, and the receipt therefor countersigned by the agent, and delivered during my lifetime."

It seems to have been understood between Roby Robinson and Leary that the former was to pay the premiums upon the policy applied for by W. F. Robinson. The following is the account given by Roby Robinson himself as to what occurred between him and Leary at the time of the issuance of the binding receipt:

"On January 5th Leary came into my office in the Equitable Building, and wanted to know if I was going to pay for the insurance, or who was going to pay for it. I told him I was going to pay for it, as previously told him, and he wanted to know when. I told him I was ready to pay for it whenever he delivered the policy. He said he wanted to close the matter up that day, as he wanted to get it in some report for the previous year, which was close about that time, or a little later on. I told him I did not want to pay for the policy until I got it. He says, 'If you will pay for it now I will give you a binding receipt.' * * * With regard to the payment receipted for in this binding receipt, I gave him my note at the same time he gave me that receipt. The note was written out then and there, and delivered to him when he delivered me the receipt. The paper, dated Atlanta, Ga., January 5th, 1898, signed 'Roby Robinson,' being a note due in ninety days, payable to W. M. Leary, or order, for $123.93, is the note. I explained to Mr. Leary that I could not pay for the binding receipt at that time, but if he wanted to close it up I would give him my note, and he could get the note discounted at the Atlanta National Bank. I suppose it was discounted that day, because I never heard anything from it, and subsequently he told me it was all right. The writing in the body of the note is in Leary's handwriting. With reference to the face of the note being $123.93, while the binding receipt calls for $247.85, I will say Mr. Leary told me he had a commission due him in writing insurance. That, of course, I knew, and he stated furthermore that if he could write a certain amount of insurance he would get a bonus on his business, and that he would give me a discount on the premium. I therefore only gave him my note for half the amount: the other part was Mr. Leary's commission that he gave to me, and this is all I gave him. I don't remember that he told me what his commission was in the matter, but he told me he would give me a discount of fifty per cent. He led me to believe that was his commission on the transaction. * * * Will Leary said he had commissions coming to him out of his business, and that he would give me his commission off, whatever you may call it, of 50 per cent., and that's the reason * * * why the note was made for half the amount."

Roby Robinson thereupon gave his note to Leary for $123.93, and received from him the binding receipt, which recites that $247.85 had been paid to him, being the first annual premium on an application for a policy on the life of W. F. Robinson. No money was in fact paid. It appears, however, from the record that Roby Robinson's note for $123.93 was discounted in bank by Leary. The other half of the premium was considered as between the two paid by Leary's giving Robinson the benefit of the commission upon the premium to which he claimed to be entitled. Leary had told Robinson that he wanted to close the matter up that day, as he wanted to get it in a report of his work for the previous year. He told him, also, that if he could write

a certain amount of insurance he would get a bonus on his business. It appears that it was this bonus that encouraged him to give a discount to the amount of one-half of the premium. The amount of the bonus which he was to receive from the company is not shown by the record. Judging by the ordinary rules that influence men, the bonus that he was to receive was probably greater than the sum he was releasing to Robinson, and it is probable that it required the addition of the Robinson policy to his other earnings to entitle him to the bonus. This agreement between Roby Robinson and the insurance company's agent, it seems to us, under the circumstances that surrounded it, made pending the application of W. F. Robinson, was intrinsically of such a character that it is not reasonable to presume that the agent would have informed the principal of its nature and purpose. It may be said that Leary had a right to release the commission, because, if Robinson had paid the premium to him in cash, he would have been at liberty to return one-half of it to him. This, however, does not conform to Leary's contract of agency. His commission of 50 per cent., according to the agreement, was to accrue "only as the premiums are paid in cash," and the receipt which he gave Robinson provided that, if the application for insurance should be declined by the company, "the amount, receipt whereof is herein acknowledged, is to be returned to said Roby Robinson." If Leary had received the cash from Robinson, it was clearly his duty to hold it as a trust fund for the insurance company, to be used in discharging the obligation of the receipt in the event the application for insurance was declined. Both he and Roby Robinson must have known this, for they both were informed of the words of the receipt, the one signing it and the other receiving it. The receipt was at least prima facie evidence that the entire premium had been paid, which was untrue, and, although it was subject to explanation by other evidence, it cast the burden of making such proof on the insurance company. With the application only submitted to the company, to effect insurance it required its acceptance and the issuance and delivery of a policy. The binding receipt changed this. If it is controlling, it required by its terms only its approval and acceptance by the company to effect insurance. While the company was considering, or, at least, had before it, the application, Leary, its agent, issued the receipt. It is true that he was a general agent, and had authority to issue it; but he had authority to do so only upon the payment of the required premium. Conceding that the note given by Roby Robinson effected the payment of one-half of the premium, we are constrained to hold that the other half was not paid by the mere words of Leary giving Roby Robinson his agreed commission, which he had not in hand, and which was not due to him and had not accrued to him by the terms of the contract of agency. His title and right to the commission was dependent upon the approval and acceptance of the application by the company. The company's right to the premium did not accrue till it accepted the application. Leary was giving what he did not have or own; Robinson received nothing. But if it be conceded that the transaction was as if the money passed from Robinson to Leary, and was by the latter returned to the former,

the result is not altered, for the controlling fact is that at the time of this transaction, whatever may have occurred later, the application had not been accepted, and the money, if it had been paid by Roby Robinson, would have been held by Leary in trust for the company, to be returned to Robinson in the event of the rejection of the application. There is no view of the case that makes the anticipated commission the property of the agent at the time of his attempted gift of it. A transaction like this, in justice and right, should not bind the company, unless it is shown that, with full knowledge, it ratified it. We reach this conclusion without imputing any wrongful intention to Roby Robinson; nor do we impute intentional fraud to the company's agent.

Conceding, but not deciding, that the facts would sustain the jury's finding, shown by the general verdict for the plaintiff, that the contract embraced in the receipt was "approved and accepted" by the insurance company, we are of opinion that the transaction between Roby Robinson and Leary was such that the approval and acceptance, if made without knowledge of what occurred between them, would not be binding on the company. We find in the record no evidence of direct notice to the company. We are of opinion that the circumstances proved are such that Leary's (the agent's) knowledge of the facts was not constructive notice to the company (the principal), and that the charge of the court, in effect, that it was notice, was erroneous.

There are other questions in the case, but, as the evidence on the next trial may not be the same, we think it unnecessary, and, perhaps, not advisable, to decide them or comment on them.

The judgment of the Circuit Court is reversed, with instructions to grant a new trial.