Myrtle B. Sackett, appellee, v. Masonic Protective Association, appellant.

Filed May 16, 1921. No. 21500.

Insurance: Accident Insurance: Voluntary Exposure to Danger. The fact that the insured was killed while voluntarily aiding a peace officer in the fresh pursuit of persons reasonably suspected of having committed a crime, and seeking to escape, will not, as a matter of law, defeat recovery in an action upon a policy of accident insurance under a provision thereof that the insurer shall not be liable in case of "voluntary exposure to unnecessary danger;" but the question whether, in performing his duty as a citizen, the insured incurred needless risk is for the jury.

Appeal from the district court for Cedar county: Guy T. Graves, Judge. Affirmed.

R. J. Millard and Alfred S. Pinkerton, for appellant.

J. C. Robinson and F. P. Voter, contra.

Dorsey, C.

The appellee brought this action to recover upon a policy of accident insurance carried by her deceased husband in the appellant association, which provided that she, as his beneficiary, should be entitled to a certain sum in the event of his death. The defense was that the insured met his death in consequence of "voluntary exposure to unnecessary danger;" there being a provision of the policy relieving the appellant from liability in case of

death so resulting.    The appellee recovered a verdict and judgment.

The insured was a physician in the town of Laurel, Nebraska.    On June 14, 1918, he was shot and killed while driving the town marshal and three other persons in his automobile in pursuit of burglars.    Between 1 and 2 o'clock in the morning the marshal was called by telephone to come down town, and when he arrived in front of a certain store a light was flashed from within and he saw a man there.    The marshal fired his revolver and went around the corner of the block to the alley in the rear of the store where two residents of the village were standing.    Dr. Sackett was coming toward them and remarked, "There he goes," and then they noticed a man about half a block south of them running east.    Dr. Sackett and the marshal pursued the man for a short distance and, after hunting around for him without success, returned to where they had been standing.    Dr. Sackett then remarked, "Listen, there is a car there," and in a moment they heard a noise and saw a bright light.    Dr. Sackett thereupon said that he would get his car, which was standing about 75 feet away, and the marshal stated that he was going to get some more shells and told Dr. Sackett to go and get his car.    The marshal went to a near-by residence and procured a revolver, Dr. Sackett meanwhile going for his car.

He picked up the marshal and they started, with another man in the back seat.    They took two other men into the car with them on the way down the street.    The car which they were pursuing was about 75 rods away. Dr. Sackett drove rapidly and they were gaining on the car ahead when a shot was fired, and the marshal, who saw the flash, but did not hear the report, said: "Hold on, they are shooting back at us."    When Dr. Sackett's car had come up within about 25 rods, the car ahead turned out to the right of the road and stopped.    Dr. Sackett did not slacken speed, but caught up with the front car in an instant and stopped a little ahead of it on

the left side of the road; the cars being only three or four feet apart. Dr. Sackett was sitting on the left side of the front seat with the marshal beside him. The occupants of the other car immediately began firing, and the marshal returned the fire. Dr. Sackett was shot and fatally wounded. There was no evidence that he spoke during the ride, or that he noticed the shot fired in their direction from the front car, or heard the marshal say that they were shooting back at them. The only remark made by Dr. Sackett of which there is any evidence was when he exclaimed that he was hurt.

The main point urged for reversal is that the undisputed evidence just detailed makes out a clear case of "voluntary exposure to unnecessary danger," and that the trial court should have so held, as a matter of law, and dismissed the action. Counsel have cited, and we have found, no adjudicated case in which the act of a private citizen in going with an officer in pursuit of criminals has been considered in connection with such a clause in an insurance policy. The elements of the inquiry must be, first, whether, under the facts, Dr. Sackett voluntarily exposed himself to danger, and, second, whether it was an unnecessary danger. To be voluntary, his act in exposing himself to danger must have been intentional and of his own will. This, of course, implies that he was conscious of the peril and purposed to incur it. That he was conscious of the danger could be shown by his acts or words at the time or, in the absence of such direct evidence, by circumstances indicating that the danger was so apparent that a man of ordinary intelligence must necessarily have known of its existence. Evidence is lacking of acts or words on his part such as would specifically show that Dr. Sackett was conscious of the danger. Were the circumstances such as to impute that knowledge to him as a man of ordinary intelligence?

There can be no doubt that when he offered to drive the marshal in his car, and while the preparations were going on, Dr. Sackett knew that the purpose was to overtake

the car ahead, if possible, and to capture the men seeking to escape in it, who were presumably burglars who had broken into the store.   There is no evidence that any one in his car, other than the marshal, was armed, but he knew that the marshal deemed it necessary to be armed. As a reasonable man Dr. Sackett must have foreseen the possibility of resistance on the part of the supposed flee-ing criminals, that physical force might be required to stop and detain them, and that firearms might be brought in play.   The danger, in our opinion, was obvious, and knowledge thereof must be attributed to Dr. Sackett at the time the pursuit was started.   Furthermore, the cir-cumstances indicate that he exposed himself voluntarily to the danger.   The suggestion that his car be used came from him.   While the marshal told him to get it, this was not a command, but an acquiescence in and accept-ance of his previous offer.   There is nothing to support the inference that he was coerced against his will to take his car and go.

Was it "unnecessary danger" within the true meaning and interpretation of the language relied upon to defeat the policy?   That question should be answered in view of what should reasonably be deemed to have been within the contemplation of the parties to the insurance con-tract.   In placing therein a clause defeating liability in case of "voluntary exposure to unnecessary danger," the intent was to establish a reasonable limit and check upon the insured in order to protect the insurer against reck-less acts and ventures in which the insured might engage, beyond the sphere of his ordinary avocation and mode of life.   Whether any particular hazard to which he ex-posed himself was necessary is to be determined, however, with reference, not only to his ordinary activities, but also to those unusual situations and emergencies which are likely to confront any person in the performance of his duty as a citizen.   The law gives every citizen the right, when crime has been committed in his presence or within his knowledge, to assist in the pursuit and apprehension

of those detected in its commission or under reasonable suspicion of fleeing from justice after perpetrating the unlawful act. *Kennedy v. State,* 107 Ind. 144; *Brooks v. Commonwealth,* 61 Pa. St. 352. And the moral duty to lend aid under such circumstances becomes a legal duty when the citizen is called upon by a peace officer. Rev. St. 1913, sec. 8744.

In the interest of the safety and well-being of society, men should not be deterred from the willing performance of that duty through fear that, in so doing, they will overstep the bounds of prudence and forfeit their rights under insurance contracts. The law regards such contracts as made with reference to the perils incident to the fulfilment by the insured of his obligation to assist in bringing criminals to justice. Such hazards do not come within the definition of "unnecessary danger." The rule is well settled that exposure to danger in the effort to save human life is not "exposure to unnecessary danger" within the meaning of the clause under consideration. *Da Rin v. Casualty Co. of America,* 41 Mont. 175, 27 L. R. A. n. s. 1164. We think there is equally strong ground to hold, by analogy, that the duty of the citizen to act for the preservation of society itself by helping to pursue and take criminals into custody is none the less urgent and controlling. Public policy forbids that contracts should be given a construction tending to discourage that sense of duty which should, in either case, be instinctive with every citizen. For that reason, the risk incurred in the performance of such duty does not, as a matter of law, constitute "exposure to unnecessary danger," but in every case arising under such conditions it will be for the jury to say whether the insured exposed himself so wantonly and recklessly as to have subjected himself to needless risk.

Certain instructions given by the trial court are criticized, but, in view of the conclusion hereinbefore reached, they were not objectionable. There being no error in the record, we recommend that the judgment be affirmed.

PER CURIAM.   For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.