**NEW YORK LIFE INS. CO. v. OLLICH.**
No. 5488.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1930.

400

A. D. Baldwin, of Cleveland, Ohio (Garfield, Cross, MacGregor, Daoust & Baldwin, of Cleveland, Ohio, on the brief), for appellant.

D. H. Wasserman, of Cleveland, Ohio, for appellee.

Before DENISON, MACK and HICKS, Circuit Judges.

MACK, Circuit Judge.

On May 10, 1928, Ollich, a resident of Cleveland, Ohio, made written application to the defendant insurance company through Greitzer, one of its soliciting agents, for a policy of life insurance and named his mother, the present plaintiff, as beneficiary. The policy applied for required a semiannual premium of $26.54. The application further provided (1) "that the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime," and (2) that only certain specified executive officers of defendant could waive any of the company's rights or requirements. The application was accepted and a policy written on May 16th and sent to defendant's branch office at Cleveland.

About a week after Greitzer had taken the application, Ollich paid him $3, and the agent agreed to advance the first premium to the company, to be repaid in $5 weekly installments. On Saturday, June 2d, the agent met Ollich on the street and said, "I have

your policy," and asked Ollich whether he had "any" money for him. The latter said, "Yes, I left the money for you with Mrs. Weiss," and asked the agent for the policy. The agent answered that he didn't have it with him but that he would give it to him on Sunday or Monday. Ollich told him to give it to his mother; this Greitzer said he would do. Thereupon on June 2d he called on Mrs. Weiss, received an additional $15, and gave her, not an official company receipt, but his personal receipt for this amount. It stated also a balance due of $8.54. Greitzer testified, "I was ready to deliver it (the policy) on Saturday night of June 2d."

Ollich was shot and died about midnight on the night of June 3d. The next morning, Greitzer, who did not know of the death of the applicant, paid the net premium, about $12, at the office of the company, and pursuant to a general practice, signed a voucher for his commission. He then proceeded to the home of Ollich's mother where he first learned of the shooting and death, and thereafter he immediately turned the policy back to the company. Notice of the death of Ollich was given to defendant and demand made for the payment of the double indemnity due in the case of accidental death. This demand was refused and the $18 tendered back to plaintiff; this she refused to accept.

Plaintiff brought suit on the policy in the state court, and the cause was duly removed to the District Court. At the close of plaintiff's evidence in chief, both sides moved for a directed verdict; defendant's motion was overruled, and the jury was directed to bring in a verdict for plaintiff for the full amount of the double indemnity. Judgment was entered on this verdict, and defendant appeals.

Defendant contends that both the full payment of the first premium and the delivery of the policy to the insured in his lifetime were conditions precedent to the effectiveness of the policy; that the agent, Greitzer, had no authority to waive either of these conditions; and that since neither of them was complied with, the policy was never in force. Plaintiff contends that the payment of more than the net premium to the agent with an agreement to pay him personally the balance, constituting his commission, in installments, effectuated a complete payment of the first premium in view of the established company practice, and that the statement of the agent to the insured that he had the policy, together with his acceptance of the insured's directions to give it to the latter's mother, constituted constructive delivery of the policy which at the time had been handed over to the agent for delivery and was in his possession at his office.

■ 1. Defendant's motion for a directed verdict was unaccompanied by a request for specific instructions or findings in case the motion should be denied. It is well settled that by mutual requests for directed verdicts, the parties submit to the trial judge "the determination of all inferences proper to be drawn from the facts submitted, and upon this review the court's conclusion of fact must stand, if the record discloses any substantial evidence to support it." Mayes v. United States Trust Co., 280 F. 25, 26 (C. C. A. 6th); Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Sena v. American Turquoise Co., 220 U. S. 497, 31 S. Ct. 488, 55 L. Ed. 559; Williams v. Veeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

■ 2. If the insured had paid the full premium to the agent after the latter had received the policy from the company for delivery on payment, and if the agent, not having the policy with him at the time of payment, had agreed with the insured to deliver it to the insured's mother, there could be little doubt that the policy would have been put into effect. Under such circumstances, payment to the company would be complete because the agent was authorized to receive the money, and his agreement to hold the policy for the insured or, as in the case put, to deliver it to another for him, would constitute a constructive delivery. Payne v. Mutual Life Ins. Co., 141 F. 339 (C. C. A. 8th); New York Life Ins. Co. v. Rutherford, 284 F. 707 (C. C. A. 9th); Jackson v. New York Life Ins. Co., 7 F. (2d) 31 (C. C. A. 8th). See Williston, Contracts, § 211.

■ Although the insurer may insert conditions in the application, requiring full payment of the first premium and delivery before the policy takes effect, such conditions are for its own benefit and may be waived. Knickerbocker Life Ins. Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Schwartz v. Northern Life Ins. Co., 25 F. (2d) 555, 558 (C. C. A. 9th), and cases therein cited; cf. Williston, Contracts, § 760. Whether or not there is, in any case, a waiver, must be determined from all the facts and circumstances.

■ But the company, too, may establish a course of dealing with its agent under which the full payment to it as specified is effectuated by its receipt of the net premium, leaving

the agent to deal with the balance of the premium, his commission, as he pleases. In the record before us, there is ample evidence to justify the conclusion that, as between the agent and the company, it was the latter's common practice to permit the agent to pay to it only the net premium in cash, without payment or accounting of the balance, his commission, regardless of whether the sum actually paid to the agent by the insured was the gross or the net premium. Accordingly, the difference between gross and net, the commission, was the agent's to deal with entirely as he saw fit. The company had no interest therein or concern with its use. McConnell v. Southern States Life Ins. Co., 31 F.(2d) 715 (C. C. A. 5th). If, therefore, the insured had paid the amount of the net premium to the agent and the latter had delivered the policy to the insured, treating the amount of his commission as a loan by him to the insured, the policy would have been in force, since there would have been an actual delivery and the company's share of the first premium would have been paid. See Metropolitan Life Ins. Co. v. Williamson, 174 F. 116 (C. C. A. 5th); Life Ins. Co. v. Condos, 24 Ohio App. 506, 157 N. E. 306. In these circumstances, the condition in the application requiring payment of the first premium could not in the light of the known practice preclude the agent from giving credit for all or any part of his commission, in which the company had no real interest. Metropolitan Life Ins. Co. v. Williamson; Schwartz v. Northern Life Ins. Co.; McConnell v. Southern States Life Ins. Co., supra. See Vance, Insurance, 178.

It would be otherwise if the practice had been that the agent hold the entire premium for the company with a duty to pay it over in full, relying for his commission on the company's promise to pay it to him, or if the agent were required to collect the full premium and to hold it in trust for the company and/or the insured, contingent upon the acceptance of the application. See Union Central Life Ins. Co. v. Robinson, 148 F. 358, 8 L. R. A. (N. S.) 883 (C. C. A. 5th). In such cases, the agent would have no interest in the premium money, no right to return any part to the insured, and therefore no right to do what is equivalent thereto, accept the net premium and treat the unpaid part as a personal loan to the insured.

■ In the instant case, the insured, Ollich, caused to be paid to the agent a sum in excess of the amount of the net premium, and the agent who had obtained the policy on June 2d agreed, at that time, to hand it over to Ollich's mother. This agreement amounted to a constructive delivery of the policy to the insured, and since the only portion of the premium in which the company was interested had been paid, the policy in our judgment, became effective at that time. If, as contended, the purpose of requiring delivery be to enable the agent to ascertain that the insured is in good health before the policy becomes effective, that purpose may be, and in the instant case was, fully accomplished at the time of the constructive delivery.

■ That the policy was to be "received by" the applicant, in addition to being "delivered to" him, adds nothing to the meaning of this latter phrase, Jackson v. New York Life Ins. Co., 7 F.(2d) 31, at page 32 (C. C. A. 9th); for even if receipt would enable him to read over the policy and reject it, if erroneous in any respect, he may waive that privilege. In this case, he clearly did so when he directed that the policy be handed over to his mother.

We deem it profitless to discuss all of the state and federal decisions cited; most of them are distinguishable. In Mutual Reserve Fund Life Ass'n v. Simmons, 107 F. 418 (C. C. A. 1st), the agent was authorized to receive only the entire premium either in cash or by note; this he did not do. In Union Central Life Ins. Co. v. Robinson, 148 F. 358, 8 L. R. A. (N. S.) 883 (C. C. A. 5th), the agent's commission of 50 per cent. was due only when the entire premium was paid in cash to the company; in the meantime the agent was required to hold all sums collected by him in trust for the insured. In John Hancock Mutual Life Ins. Co. v. McClure, 218 F. 597 (C. C. A. 3d), and Ætna Life Ins. Co. v. Johnson, 13 F.(2d) 824 (C. C. A. 8th), the insured had paid no part of the premium. Nor is Bradley v. New York Life Ins. Co., 275 F. 657 (C. C. A. 8th), in conflict with the result here reached; the agent was not authorized expressly or by practice to accept applicant's note payable to himself for the full amount of the first premium; moreover, there was neither actual nor constructive delivery. In Inter-Southern Life Ins. Co. v. McElroy (C. C. A.) 38 F.(2d) 557, there was no custom or practice permitting the agent to remit only the net premium; and in Dodd v. Ætna Life Ins. Co., 35 F.(2d) 673 (C. C. A. 6th), there was neither waiver of full payment nor acceptance, in fact or by practice, of the agent as the company's debtor in lieu of payment by the insured either in cash or by note.

3. The policy provided that double indemnity should be paid "upon receipt of due

proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means"; but that "Double Indemnity should not be payable if the Insured's death resulted from * * * committing an assault or felony." At the beginning of the trial it was stipulated that Phillip Ollich was shot and died some time between 11 p. m. of June 3 and 1 a. m. of June 4, 1928. No further evidence on this issue was offered. Counsel for defendant stated that Ollich had been shot in the commission of a felony; this, however, was not evidential. Plaintiff's contention that the facts stipulated constituted a prima facie case of accidental death, and that the burden of proving that the shooting occurred while Ollich was engaged in some illegal pursuit was on defendant, was sustained by the trial judge who directed a verdict for the amount of the double indemnity.

It is well settled that the burden of proving that the death of an insured was the result of bodily injury accidentally caused is on the plaintiff. New Amsterdam Casualty Co. v. Shields, 155 F. 54 (C. C. A. 6th); Ætna Life Ins. Co. v. Ryan, 255 F. 483 (C. C. A. 2d). See 3 Wigmore, Evidence, §§ 2510 (C), 2537. What constitutes an "accident" is a much mooted question. See Pope v. Prudential Ins. Co., 29 F.(2d) 185 (C. C. A. 6th). It is, however, settled law that not merely a purely accidental shooting but that even an intentional shooting, if it occurs without the fault of the insured, will be deemed an accident. On the other hand, if the insured has (within some rather vague limits) substantially contributed to the shooting by some fault of his own, then it is not deemed accidental.

A case will rarely arise in which there is no evidence introduced of at least some surrounding circumstances that will turn the scale in favor of or against accident. Such circumstances may suffice to make out a prima facie case justifying a directed verdict on failure of the defendant to go forward with evidence.

Proof, however, of the nature of the occurrence resulting in death is an essential part of plaintiff's claim for double indemnity. If it be shown that death was the result of an injury inflicted through violent and external means, then as between suicide and accident, there is a presumption that it was accident. The burden of going forward with evidence is then on the insurer. New York Life Ins. Co. v. Ross, 30 F.(2d) 80 (C.

C. A. 6th). See, too, Mutual Life Ins. Co. v. Gregg, 32 F.(2d) 567 (C. C. A. 6th). But unlike these cases, the issue here is not as between accident and suicide; there is no suggestion in the circumstances or in fact of suicide. Here it was either an accidental or an intentional shooting; and if intentional, then it was either with or without fault of the insured.

For we have in the evidence no surrounding circumstances; the refusal of the trial judge to grant a requested continuance to enable plaintiff to offer evidence on this point caused plaintiff to rely upon the bare stipulation "that Ollich had been shot." The nature of the occurrence that gave rise to the shot can only be surmised. Surmise, however, does not suffice; and there is no presumption either as between a shot fired accidentally and intentionally, or if intentionally, as between one contributed to substantially by the insured's fault and one occurring without such fault. There was error, therefore, in directing a verdict for more than single indemnity with interest and costs. This error is capable of correction by a remittitur of one-half of the judgment.

The judgment will therefore be reversed, and the cause remanded for retrial, unless plaintiff will file with the clerk of the District Court for the Northern District of Ohio, Eastern Division, a remittitur of one-half of the judgment with the interest thereon, within twenty days. If such remittitur be filed, then the judgment as remitted will be affirmed. In either event, costs in this court are awarded appellant.