## MUTUAL LIFE INS. CO. OF NEW YORK v. SARGENT.

### No. 6074.

Circuit Court of Appeals, Fifth Circuit.
July 9, 1931.

Rehearing Denied Aug. 5, 1931.

Douglas Arant, of Birmingham, Ala. (William M. Neal, of Birmingham, Ala., Frederick L. Allen, of New York City, and Bradley Baldwin, All & White, of Birmingham, Ala., on the brief), for appellant.

W. H. Mitchell, of Florence, Ala., and A. N. Carmichael, of Tuscumbia, Ala., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is from a verdict and judgment in favor of appellee, plaintiff below, in a suit upon a policy providing double indemnity for death effected solely through external, violent, and accidental means.

At the close of the evidence, appellant, defendant below, moved for an instructed verdict on the ground that the evidence did not permit of any other conclusion than that, though deceased came to his death through external and violent means, yet the death was not an accidental one because induced by the voluntary actions of deceased when he knew or ought to have known that his death would reasonably result.

Only one error is assigned, the action of the court in not taking the case from the jury. The charge of the court is not brought up in the record, and it is conceded that if the case was one for the jury, the court correctly and fairly submitted the issues.

Appellee invokes the rule that "the jury must determine the fact as to what caused the death. There need not necessarily be direct proof or evidence of the cause. The cause may be found by the jury from facts and circumstances." Laessig v. Travelers' Protective Ass'n, 169 Mo. 272, 69 S. W. 469, 471.

That if an occurrence is as to the insured "unforeseen, unexpected and unusual, not taking place according to the usual course of things and therefore accidental in the usual, natural and popular meaning of the word," it is an accident. Strother v. Accident Ass'n, 193 Mo. App. 718, 188 S. W. 314; Nerrow v. Pacific Mutual Life Ins. Co. (Mo. App.) 294 S. W. 97, 99; Laessig v. Travelers' Protective Ass'n, 169 Mo. 272, 69 S. W. 469.

He insists that this is pre-eminently a fact case for the jury. That before such a policy may be, as a matter of law, defeated, the chain of consequences must be more clearly and tightly drawn between an inexcusable act on the part of the insured and the fatal result than the record in this case draws it. That whether the deceased should have reasonably expected the result which followed his remaining at or returning to the place of the attack upon him was for the jury, and that an instruction for the defendant would have been as unreasonable as one for the plaintiff.

That appellee's position is the correct one we think a brief review of the record, in the light of the applicable law, will show.

The law of the case presents little difficulty, and may be stated in terms of established propositions.

■ That death is none the less accidental, within the terms of a policy like the one in suit, because of the fact that it results from the intentional act of another, if the insured is innocent of aggression or wrongdoing, or even if he is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another. Occidental Life Ins. Co. v. Holcomb (C. C. A.) 10 F.(2d) 125, 126.

■ It is equally well settled that the fact that a citizen in going about the business of his life in the performance of his duties or obligations subjects himself to or meets when it is pressed upon him a hazard or danger, with conscious knowledge of such danger, does not prevent a finding that his death was accidental. Myrtle B. Sackett v. Masonic Protective Ass'n, 106 Neb. 238, 183 N. W.

101, 17 A. L. R. 188 and note; Interstate Business Men's Acc. Ass'n v. Lester (C. C. A.) 257 F. 225; Employers' Indemnity Corp. v. Grant (C. C. A.) 271 F. 136, 20 A. L. R. 1118 and note; Travelers' Ins. Co. v. Dupree, 17 Ala. App. 131, 82 So. 579.

■ "If the party does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him." Interstate Business Men's Acc. Ass'n v. Lester (C. C. A.) 257 F. 225, 230; Occidental Life Insurance Co. v. Holcomb, supra.

■ Upon the matter of proof it is the law, though there are one or two authorities contra [New York Life Ins. Co. v. Ollich (C. C. A.) 42 F.(2d) 399, 401], that while the burden is upon plaintiff in cases of this kind to prove death resulting from external, violent and accidental means, proof without more that insured was killed by another raises the presumption that death was accidental, and makes out a prima facie case in the absence of evidence to the contrary. Smith v. New York Life Ins. Co. (C. C. A.) 31 F.(2d) 281; Nerrow v. Pacific Mutual Life Ins. Co. (Mo. App.) 294 S. W. 97, 99; Withers v. Pacific Mutual Life Ins. Co., 58 Mont. 485, 193 P. 566; Aetna Life Ins. Co. v. Rustin, 151 Ky. 103, 151 S. W. 366; Jones v. U. S. Mutual Acc. Ass'n, 92 Iowa, 652, 61 N. W. 485; Aetna Life Ins. Co. v. Little, 146 Ark. 70, 225 S. W. 298.

■■ If, however, defendant makes proof that the death occurred as the result of an affray or an encounter, then it is incumbent upon the deceased to take the initiative again and show by other evidence that the death was accidental. Smith v. New York Life Ins. Co. (C. C. A.) 31 F.(2d) 281. And this can be accomplished by showing that the insured was not the aggressor or if he was the aggressor, that he could not in the circumstances reasonably have anticipated that he would be killed. Smith v. New York Life Ins. Co., supra; Occidental Life Ins. Co. v. Holcomb (C. C. A.) 10 F.(2d) 125. In each case if there is any issue of fact as to how the matter occurred, and as to what ought to have reasonably been expected as likely to ensue, the matter is for the jury. Smith v. New York Life Ins. Co., supra; Employers' Indemnity Corp. v. Grant (C. C. A.) 271 F. 136; Aetna Life Ins. Co. v. Gallaway (C. C. A.) 45 F.(2d) 391; Nerrow v. Pacific Mutual Life Ins. Co. (Mo. App.) 294 S. W. 97, 99.

6

[7] It is true enough that the rule, though not universal, is well established in the federal courts, and in some state courts, that the uncontradicted testimony of a witness not impeached or discredited in any way, to a plain and simple fact capable of contradiction if untrue, does not raise an issue of fact to be submitted to a jury. Thomas v. Hawthorne ('Tex. Civ. App.) 245 S. W. 973; Chesapeake & O. Ry. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983; Still v. Stevens (Tex. Civ. App.) 13 S. W. (2d) 956.

■ It is also true, however, that where there are facts and circumstances or the testimony of witnesses which furnish contradiction, or where, as here, the testimony cannot be controverted because it relates to statements by or transactions with a decedent, whose lips are sealed by death, it is for the jury to judge the truth of the testimony, and to say whether the statements attributed to the deceased were in fact made by him. Aetna Life Ins. Co. v. Gallaway (C. C. A.) 45 F. (2d) 391; Casualty Reciprocal Ex. v. Parker (Tex. Com. App.) 12 S.W. (2d) 536; Smith v. Mutual Life Ins. Co. (C. C. A.) 31 F. (2d) 280; Note Kelly v. Jones, 8 A. L. R. 792.

■ Coming to the record in the case, it therefrom appears that on plaintiff's side there is testimony of an insulting, abusive, and threatening attack, wholly unprovoked, made upon Beck, the insured, by the man who killed him. That at that time the insured and his companion, Mrs. Thurman, to whom he was engaged to be married, were in the act of assisting Tapp, the slayer, to get his car out of the ditch in which it was overturned. That as the result of the encounter between Tapp and Beck, in which Tapp wildly flourished his pistol and scattered the crowd, everybody went away from the place except Tapp and his companion, Mrs. Thurman who was in the car, Beck, and Nix, on whose testimony appellant mainly relies. Nix testified in substance that after having been attacked the insured came to him complaining of Tapp's treatment of him, saying, "I ought to shoot him." That to his advice to let Tapp alone, Beck replied, "I am going up there and shoot him down," and jerking his pistol from his overcoat pocket, he started in the direction of Tapp, who was a short distance away at the car; that he (Nix) walked over to the commissary and spoke to his daughter, stopped, and the shooting began. That he heard pistol shots but saw none.

Against this version of the shooting, Mrs. Thurman testified that after she had gotten the car out of the ditch and started towards her home, as she passed by Tapp he said to her, referring to the insured, "Old man Beck put chunks in the road to ditch me," and that upon her remonstrating, "He did not do it; you owe him an apology for talking that way," Tapp raised his pistol, pointed it in the general direction of Beck and herself, and fired at Beck. That during the shooting Tapp killed Beck, shot her, and fired at Weaver, his companion.

She also testified that when she tried to assist Beck, Tapp said: "Don't turn the damned * * * over; if you do I will shoot him in the back." During the shooting, Beck shot Tapp twice. During these occurrences Tapp was acting under the influence of liquor.

Upon this testimony the jury concluded, as it had a right to do, that Tapp, drunken and dangerous, incensed because of his fancied grievance at Beck for putting chunks in the road, was moved to the killing by Mrs. Thurman's just and bold resentment of his meanness, and that drunk and irresponsible, he did just as Mrs. Thurman said he did, commenced the firing, Beck shooting only in self-defense and to protect himself and Mrs. Thurman. For while it is true that Nix' testimony as to the statements made by Beck were not directly contradicted, they could not have been for Beck was dead, and no one else, according to Nix, was present. Besides, the statement of Mrs. Thurman as to how the matter occurred contradicted Nix just as he was contradicted on many other points of the record, as to what was said and done. The jury had before them the fact of Nix' active interest in defending Tapp from the murder charge, voluntarily taking measurements and preparing himself to testify, the inherent improbability of the statement that Beck, having Mrs. Thurman under his protection, would have deliberately exposed her to the risk of a pistol duel, and the numerous contradictions between Nix' testimony and that of other witnesses as to what was said and done at the first encounter. Nix alone, of all the witnesses, testified that Tapp did not curse and abuse Beck, that Beck was himself angry, and that Beck ordered Mrs. Thurman out of the car, on which latter point he was flatly contradicted by Mrs. Thurman and corroborated by no one.

All of these matters were for the jury in weighing the evidence and determining what actually transpired. In this case not only what men did and said, but the motives which prompted them, the springs from which their speech and action flowed, were in question.

In such a case what men did, and what reasonable men would have expected to flow from what they did, is for the jury, and it would have been, as appellee said, as reasonable, but not more reasonable, for the court to have instructed a verdict for plaintiff because of the inexcusable aggressiveness of Tapp, as for it to have instructed a verdict for defendant merely because Beck stayed at, or returned to, the place of the first encounter, and returned the fire of Tapp when Tapp attacked both him and his companion.

Finding the record without error, the judgment of the court below is affirmed.