Inez Smith Graves **ADAMS**, Plaintiff-
Appellant,

v.

**STATE FARM LIFE INSURANCE COM-
PANY**, Defendant-Appellee.

No. 71–1798.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1971.

Rehearing and Rehearing En Banc
Denied Jan. 18, 1972.

Coleman, Circuit Judge, dissented
and filed opinion.

Jere Austill, Jr., Mobile, Ala., for
plaintiff-appellant.

Richard W. Vollmer, Jr., Geary A.
Gaston, Pillans, Reams, Tappan, Wood
& Roberts, James D. Brooks, Mobile,
Ala., for defendant-appellee.

Before WISDOM, COLEMAN and
SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This action was brought in an Ala-
bama court and removed to federal court
by the defendant-appellee on diversity
grounds. The plaintiff-appellant, the
named beneficiary under two life insur-
ance policies, sought to recover double
indemnity for the claimed accidental
death of the insured under the double
indemnity provisions of the two policies.
The district court ruled that the manner
in which the insured died was foreseeable
as a matter of law—and, therefore, not
accidental—and granted the insurer's
motion for summary judgment. Adams
v. State Farm Life Insurance Company,
S.D.Ala., 1971, 324 F.Supp. 648. Under
the Alabama cases [1] as we read them,
foreseeability under the circumstances
present was a jury question, rendering
disposition by summary judgment imper-
missible. We reverse and remand for
further proceedings.

Both insurance policies upon the life
of John Andrew Crawford were issued
by State Farm on March 18, 1965, the
day the decedent married the plaintiff-

---

1. Under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, Ala-
bama law governs our decision.

appellant. She and the insured were divorced on December 12, 1966, one week after the insured had the beneficiary of the policies changed to Clara Jean Mathews. Three days after the divorce the insured married Clara Jean Mathews, with whom he was living on the date of his death, March 10, 1967. Marital difficulties arose between the insured and Clara Jean Mathews Crawford and the insured again designated the plaintiff-appellant as beneficiary under the policies. This last change of beneficiary was approved by the home office of State Farm on March 10, 1967.

The circumstances surrounding Crawford's death are not in dispute, the only two eye witnesses being Clara Jean Mathews Crawford, his wife, and Mrs. Mary Frances Geyer, Clara Jean's mother. The depositions of both of these witnesses were submitted to the lower court in support of State Farm's motion for summary judgment. Although minor discrepancies are present, their substance is the same. Clara Jean was disturbed by Crawford's peculiar actions on the evening of March 9, 1967, the night before his death. She told her mother in a telephone conversation that if he came home again acting that same way they would need to get psychiatric help for him. At Clara Jean's suggestion her mother picked up and took home with her Clara Jean's two young children by a prior marriage, aged 7 and 4 years. A 14 year old adopted daughter of the Geyers, Ann, was left with Mrs. Crawford. On the date of his death, March 10, 1967, Crawford had gone to work at his job in the mail department of the G. M. & O. Railroad in Mobile, Alabama. He returned home a little later than usual that evening and immediately sent Ann outside to play. He talked calmly but irrationally to Clara Jean, indicating that Inez (his former wife and the present plaintiff-appellant) had told him that Mabel (a deceased former wife) wouldn't be happy because he was married to a young person, and indicated that he would have to kill Clara Jean on this account. She saw "this big tall gun, a shotgun or some kind of a big gun" sitting out in the walk-in closet in the bedroom, and left the room saying that she was going to let the dog in. Crawford warned her not to leave, but while out of the room on this pretext she sent the teenager, Ann, next door to telephone her mother that Johnny was acting strangely again. Some time later, Mrs. Mary Frances Geyer, the mother, unexpectedly appeared at the bedroom door armed with a pistol at a time when Clara Jean knelt on the bedroom floor pleading with John Andrew Crawford for her life. He had a shotgun in his hands aimed at Clara Jean at point-blank range. Mrs. Geyer called "John!" to Crawford, who turned with the weapon pointed toward Mrs. Geyer. Mrs. Crawford pushed the shotgun barrel upward, spoiling Crawford's aim, and Mrs. Geyer, who testified that she had never fired a gun before, fired three shots wounding her daughter and killing her son-in-law. Since, as indicated above, the mother and daughter are the only two eye witnesses to the homicide, the district judge correctly decided that there was no disputed factual issue before him. But the inferences to be derived by a trier of fact from these undisputed facts are varied and conflicting. They appear to us to require resolution by a jury.

Relying upon O'Bar v. Southern Life and Health Insurance Company, 1936, 232 Ala. 459, 168 So. 580, the district court ruled that as a matter of law the insured's death was not the result of "external, violent and accidental means" (the language of the policies) because he deliberately put his life in peril by assaulting his wife with a loaded firearm. The lower court reasoned that Crawford, acting as the aggressor with a firearm, should have expected a violent response from the intended victim or from a person coming to her aid.[2] The appellant,

2. The district court observed:
    "Courts have long recognized the legitimate use of such retaliatory force as may be reasonably necessary in defending oneself against an attack. Thus, where the insured commits an assault while armed he must expect a more violent retaliation. Under these

citing the later case of Aetna Life Insurance Company v. Beasley, 1961, 272 Ala. 153, 130 So.2d 178, argues that the courts of Alabama, if confronted with a factual situation identical to the one at bar, would hold that the matter of foreseeability was a question for jury resolution. The facts, as well as the holdings of these two cases, hold the key to our problem.

The insured in *O'Bar*, supra, armed with a pistol, attacked a one-armed man in the latter's home. After firing one shot at the intended victim, the insured was unable to discharge another round because of mechanical malfunction of his weapon. The insured then beat the victim with the pistol and kicked him. With the insured on top of him, the victim pulled a knife and fatally stabbed the insured in the chest. The Alabama Supreme Court held that the "insured brought about a condition from which his death was not to be unforeseen or unexpected nor an unusual result of it", 232 Ala. at 462, 168 So. at 582, and reversed a judgment for the beneficiary under the accidental death provision of the policy.

*Beasley*, supra, was an action upon a group policy insuring against death from bodily injuries sustained from accidental means. The Alabama Supreme Court held that the evidence raised a jury question as to the accidental nature of the insured's death in a situation where the insured's fourteen year old son, who had never before offered resistance to the insured, fatally shot the insured when the latter threatened to kill both the son and the insured's wife. The *Beasley* court's discussion of the *O'Bar* decision raises some doubt as to whether the strict language of *O'Bar* is any longer controlling law in Alabama.[3] We consider it unnecessary to resolve such doubt for we view the possible inferences to be drawn from the facts here as requiring submission to a jury.

The Alabama Supreme Court in *Beasley* cited with approval the general rule from 45 C.J.S. Insurance § 788, page 827,[4] as well as this Court's decision in Mutual Life Insurance Company of New York v. Sargent, 1931, 51 F.2d 4, 5, where we held that the foreseeability of a retaliatory response from the intended victim was a question for the jury.[5]

---

circumstances, the court cannot hold death to be 'unforeseen, unexpected or unusual'. For the insured cannot be charged merely with knowledge of his intended victim's apparent capacity to resist, but that resistance in which the person attacked is justified." 324 F. Supp. at 649.

3. The Alabama Supreme Court commented:
"In O'Bar v. Southern Life and Health Insurance Company, 232 Ala. 459, 168 So. 580, this court set up some tests by which the facts must be tested to constitute an accidental death. It must have been from something 'unforeseen, unexpected, and unusual', or 'which happens as by chance, or which does not take place according to the usual course of things', or 'without foresight or expectation', or 'by reason of some violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation'. Here, the facts, so tested, tend to show death was 'sustained solely through * * *

accidental means'." 272 Ala. at 156, 130 So.2d at 181.

4. 45 C.J.S. Insurance § 788, page 827:
"The unprovoked death of, or injury to, insured while quarreling or fighting with another, under circumstances which insured *has no reason to anticipate will lead to such a result*, is death or injury by external, violent and accidental means within the coverage of an accident policy. If insured is innocent of aggression or wrongdoing, and is killed or injured in an encounter with another, his death or injury is accidental, or is caused by accident means, within the policy, as where he is injured while defending himself against an unprovoked assault; and *even though he is the aggressor, if he could not reasonably anticipate that his acts or course of action would result in death* or bodily injury at the hands of his antagonist, insurer may be held liable. . . . " (Emphasis supplied)

5. Although arising in Alabama, *Sargent* was pre-*ERIE*.

We do not interpret Alabama law to hold that an aggressor-insured who is in possession of a lethal weapon should be charged with a greater degree of knowledge of his intended victim's capacity to resist than would be charged to an unarmed aggressor-insured. We need not decide whether *O'Bar* is still good law in Alabama, although *Beasley* apparently does narrow its application, because the case at bar is distinguished from *O'Bar* by the fact that Crawford was killed—unexpectedly at that—by an individual other than his original intended victim. The plaintiff below was entitled to have a jury determine whether Crawford had any reason to foresee forceful retaliation by Clara Jean, since she had never resisted him and was cowering on her knees at his mercy immediately prior to Crawford's death. Equally, the plaintiff-appellant is entitled to a jury decision as to whether Crawford could reasonably foresee that Clara Jean's mother, Mrs. Geyer, who had never fired a shot in her life, would suddenly appear armed with a pistol and administer the lethal assault. Of course we do not suggest what the answer to these questions should be. We simply hold that under *O'Bar,* or under *Beasley,* or under *O'Bar* as refined by *Beasley*, these are questions requiring a jury's determination. The trial court should find no difficulty in formulating an appropriate jury instruction on foreseeability from the language of the Alabama Supreme Court in *Beasley*.

A jury question as to foreseeability was raised by the facts of this case. Summary judgment was improper. The judgment of the lower court is reversed and the cause is remanded for further proceedings.

COLEMAN, Circuit Judge (dissenting).

I respectfully dissent. I think the District Court correctly decided this case.

With deference, I am wholly unable to see any room for the thought that Crawford's death was anything but the direct and proximate result of his own deliberate course of conduct. The record shows that when Mrs. Geyer appeared on the scene she had pistol in hand. As soon as she called Crawford's name he turned his shotgun on her, whereupon she immediately killed him. When under such circumstances an individual points a deadly weapon toward another who is similarly armed he must anticipate that he may be killed. Experience teaches as a matter of common knowledge that he should have every reason to expect to be shot.

To go further, I would be of this opinion even if Crawford had kept the gun trained on Mrs. Geyer's daughter instead of pointing it toward her. The right to kill when the necessity is reasonably apparent for the defense of another is too well established in the public mind for Crawford to have been oblivious to the likelihood that if he did not lower the gun the lady with the pistol would fire as quickly in the defense of her daughter as of herself. It makes no difference that Mrs. Geyer had never previously fired a pistol. Pulling a trigger is a very simple physical act, often performed by children with fatal consequences, especially when, as here, firing at point blank range.

If I had the power of decision I would unhesitatingly hold, as a matter of law, that Crawford's death was no accident, that he provoked it, and that he should have anticipated the likelihood of it. I see nothing in the Alabama cases *mandating* a different result.

I agree with my Brethren that the issue is governed by Alabama law. I note that it was State Farm who removed the case from the Alabama Courts. Now, it must go to a jury on undisputed facts to settle "the inferences".

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge

in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local First Circuit Rule 12) the Petition for Rehearing en banc is denied.